THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH W. SINNOTT, Defendant-Appellant.

Fourth District   No. 4—91—0274

Opinion filed March 26, 1992.

924

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Kevin T. McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

On April 12, 1990, defendant Kenneth Sinnott was charged in Mc-Lean County with possession of a controlled substance with intent to deliver. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(A).) On January 31, 1991, a jury acquitted defendant of the charged offense but convicted him of the uncharged included offense of unlawful possession of a controlled substance. (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(a)(2).) He was sentenced to a four-year term of probation with various conditions. The court also imposed a $400 fine, a street-value fine of $2,700, and court costs.

Defendant appeals, arguing (1) the judge violated the separation-of-powers doctrine and denied him assistance of counsel by *sua sponte* including jury instructions on an uncharged included offense when defense counsel objected to their inclusion and the State had acquiesced in not instructing on the included offense; (2) imposing a street-value fine violates due process because he was a user and not a trafficker of controlled substances and the intent of the statute is to treat traffickers more harshly; and (3) he is entitled to credit toward both fines for the 63 days he was incarcerated before sentencing. We affirm the trial court's inclusion of the jury instruction on the lesser offense, and

reject defendant's second argument. We agree defendant is entitled to $5 credit for each day he was in custody before sentencing, but only toward one of his fines.

At defendant's trial, David Jocson, special agent for the Illinois State Police, testified he went to the Amtrak station in Bloomington on March 16, 1990, after receiving information defendant would be arriving on a train from Chicago and would be in possession of cocaine. When defendant and his girlfriend exited the train, Jocson approached them and identified himself. Defendant agreed to speak with Jocson and denied he possessed any drugs. Defendant consented to a pat-down search and to a search of his backpack. Jocson found a cocaine grinder, 27.5 grams of cocaine, and a "one-hitter" containing cocaine. Jocson testified a normal dose of cocaine was one-quarter to one-half gram. He stated on cross-examination that in searching defendant's backpack he did not find any paraphernalia commonly used to ingest cocaine, such as blades, mirrors, straws, or rolled papers.

Michael Bernardini, a special agent supervisor for the Illinois State Police, testified he too was present when defendant was arrested at Amtrak. According to Bernardini, when he later asked defendant why he sold narcotics, defendant told him he did it for money. On cross-examination, Bernardini stated normally a person would buy between one-quarter gram and one gram for personal use. He conceded that some people consume more than others. On direct examination he stated he did not believe the defendant was under the influence of any substance when he interviewed him.

Russell Thomas, a detective with the Bloomington police department, testified when he booked defendant on March 16 defendant possessed a vial containing a white powdery substance. Thomas testified he heard defendant state to Bernardini that he was selling drugs for money. Daniel Lecocq, a forensic scientist with the Illinois State Police, testified the grinder contained cocaine residue, the substance found in defendant's jeans contained 68% pure cocaine, and the vial contained .89 grams of cocaine.

Defendant testified that on March 16, 1990, he went to Chicago to visit his parents. While in Chicago, defendant purchased approximately one ounce of cocaine. Defendant also admitted paraphernalia found in his possession the day of his arrest belonged to him. He described himself as a cocaine addict. The 27.5 grams found in his possession would have lasted him five to eight days. Defendant testified the cocaine he possessed was for his own use and he was not intend-

ing to sell it. He denied he told Bernardini he was selling cocaine for money.

At the instructions conference, defense counsel informed the trial judge that after discussions with defendant, defendant did not wish to submit instructions related to the uncharged included offense of possession of a controlled substance. The judge however, concluded instructions on the included offense were necessary. Over defense counsel's objections, the judge instructed the jury on the included offense of possession of controlled substances. The State did not object to the giving of the instructions.

The judge instructed the jury that the charged offense included the lesser offense of possession, provided a definition of possession, and gave an issues instruction stating the elements necessary for the jury to find defendant guilty of possession. The jury was provided verdict forms to determine defendant's guilt in reference to the charged offense, the uncharged included offense of possession only, or a determination of not guilty as to both charges. In his post-trial motion, defendant alleged the trial court erred by instructing the jury on the uncharged included offense when the State did not object to the not instructing on it. Defense counsel contended the judge's action amounted to his assuming the role of an advocate and deprived defendant of the advice of counsel. Defense counsel also filed an affidavit in which he stated that after discussions with him, defendant knowingly and voluntarily decided to not seek such instructions.

At defendant's sentencing hearing, Kirk Lonbom, a criminal intelligence analyst with the Illinois State Police, testified the street value of cocaine in March 1990 was $100 per gram. Because defendant possessed 27.5 grams when he was arrested, the value of the cocaine found in his possession was $2,700.

The first issue raised by defendant is the propriety of the trial judge's *sua sponte* instructing on the uncharged included offense when defense counsel objected to these instructions and the State had acquiesced in not instructing on it. The State contends the judge was correct in including the instructions on the included offense because if the instructions were not provided, reversible error might have resulted.

Defendant first argues this action violated the separation-of-powers doctrine because by including the instructions under these circumstances, the judge assumed the role of an advocate. This role, defendant contends, is generally reserved for the prosecutor. Defendant cites several cases in support of his contention. These cases, however, emphasized that it is the prosecutor's role to determine which

offenses should be charged against a defendant. See *People ex rel. Daley v. Moran* (1983), 94 Ill. 2d 41, 45-46, 445 N.E.2d 270, 272; *People v. Coleman* (1990), 205 Ill. App. 3d 567, 577, 563 N.E.2d 1010, 1016.

■ The State argues defendant has waived this issue by not including it in his post-trial motion. Although defendant's post-trial motion does not specifically raise a separation-of-powers argument, the motion complains that the trial judge assumed the role of an advocate. This was sufficient to preserve the issue for our consideration. See *People v. Land* (1988), 169 Ill. App. 3d 342, 354, 523 N.E.2d 711, 718.

The State also argues defendant lacks standing to raise the separation-of-powers argument because the judge's actions affected only the State's prosecutorial powers. It cites *United States v. Miller* (1976), 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619, as support. *Miller* is distinguishable. The Court concluded defendant had no fourth amendment privacy protection in bank records which the government subpoenaed. (*Miller*, 425 U.S. at 443-44, 48 L. Ed. 2d at 79-80, 96 S. Ct. at 1624.) Unlike *Miller*, defendant in this case had a right to a fair proceeding. The State's powers were not the only rights affected. Defendant was convicted only of the included offense as to which the judge required the instructions. Without those instructions, defendant may not have been convicted of any offense.

Defendant contends the court usurped the role of the State as prosecutor by requiring the instructions. Perhaps the prosecutor should not have initially acquiesced in not giving these instructions. However, the prosecutor did not object to giving the instructions when the judge indicated it was necessary to instruct on the uncharged included offense. The State did not, and does not, complain that the judge usurped an executive power typically delegated to the prosecutor.

In any event, substantial defects in instructions may be reviewed where the evidence of guilt is close or when the error denied defendant a fair trial. (*People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538, 543; *People v. Thurman* (1984), 104 Ill. 2d 326, 330, 472 N.E.2d 414, 416.) Although the evidence as to whether defendant possessed contraband is not closely balanced, his fundamental right to a fair proceeding compels us to consider whether it was proper for the judge to provide the instructions on the uncharged included offense.

Therefore, we consider the merits of defendant's argument. An included offense contains some but not all elements of the greater charged offense and no other elements. It is impossible to commit the

greater offense without also committing the lesser. (*People v. Traufler* (1987), 152 Ill. App. 3d 987, 990, 505 N.E.2d 21, 23.) An indictment of a particular offense is an indictment on all included offenses even though the included offenses are not specifically set forth in the indictment. (*People v. Ostrand* (1966), 35 Ill. 2d 520, 530, 221 N.E.2d 499, 505 (and cases cited therein).) A person must first possess a controlled substance before the person can intend to deliver it. The possessory offense of which defendant was convicted (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(a)(2)), and on which the judge provided the instructions, was an included offense of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(a)(2)(A)). See, *e.g.*, the issues instructions for the two offenses (Illinois Pattern Jury Instructions, Criminal, Nos. 17.11, 17.13, at 237, 242-43 (2d ed. Supp. 1989)).

■ For reasons other than the State's rationale, we conclude the trial judge did not err by providing instructions on this offense. It was within the judge's discretion to instruct upon it. The State relies on *Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382, as support for its argument the defendant is entitled to included offense instructions to protect him from substantial risk that the jury will convict of the greater charge where he is clearly guilty of some offense. *Beck*, 447 U.S. at 633-34, 65 L. Ed. 2d at 400-01, 100 S. Ct. at 2388, quoting *Keeble v. United States* (1973), 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850, 93 S. Ct. 1993, 1997-98.

We find it unnecessary to rely on these cases which were based on the court concluding it was prohibited from providing instruction on the included offense. In *Beck*, an included offense instruction was not provided because of an Alabama statute prohibiting such an instruction in capital cases. (*Beck*, 447 U.S. at 627-28, 65 L. Ed. 2d at 396-97, 100 S. Ct. at 2384-85.) An instruction on the included offense in *Keeble* was not provided because it was not enumerated as a crime for which a Native American who committed the charged offense on an Indian reservation could be tried under the Major Crimes Act of 1885. *Keeble*, 412 U.S. at 205-06, 36 L. Ed. 2d at 846, 93 S. Ct. at 1994.

The State also relies on cases in which included offense instructions requested by defendant were not provided. (See *People v. Fonville* (1987), 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255, 1262.) In this case, defendant objected to the instructions on the uncharged included offense.

The issue raised by the facts here is whether a trial judge can *sua sponte* submit jury instructions on an uncharged included offense. In *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266, the Illinois Su-

preme Court discussed this issue. The court concluded, "[w]hen the evidence will support either charge and the prosecution does not tender an instruction on the lesser offense, the defendant has a choice, subject to the judge's authority to instruct *sua sponte*, of submitting one or both instructions." (*Taylor*, 36 Ill. 2d at 490, 224 N.E.2d at 270.) The jury convicted Taylor of murder. Defendant argued the judge should have *sua sponte* provided an instruction on the lesser offenses of voluntary and involuntary manslaughter. (*Taylor*, 36 Ill. 2d at 487-88, 224 N.E.2d at 269.) The court disagreed. Its reasoning illustrates our view of the judge's role in determining whether instructions on an uncharged included offense should be given over defendant's objection. See also *People v. Washington* (1971), 132 Ill. App. 2d 616, 622, 270 N.E.2d 436, 439.

The court reasoned a defendant's claim to a "right" to included offense instructions is inappropriate. It noted when defendant waives a jury trial, the judge determines whether he is guilty of an included offense or the greater offense and he has no "right" to restrict the judge's determination of his guilt or innocence only to the greater offense of murder. (*Taylor*, 36 Ill. 2d at 488-89, 224 N.E.2d at 269-70; see also *People v. Tuttle* (1972), 3 Ill. App. 3d 326, 328, 278 N.E.2d 458, 459-60.) The court further reasoned:

> "And if the evidence would support a verdict of manslaughter, a defendant will not be heard to complain that a manslaughter instruction was given, even though he did not request it. \*\*\* It is only where the evidence establishes that the defendant is guilty of murder or is not guilty, as for example in cases in which the defense is alibi, or mistaken identity, that a defendant may be said to have a right not to have the jury charged as to lesser included offenses." *Taylor*, 36 Ill. 2d at 489, 224 N.E.2d at 270.

Defendant does not contend the evidence was insufficient to convict him of possession of a controlled substance. In fact, defendant testified he possessed the controlled substance for personal use, thereby conceding he possessed the drugs. The evidence supported a guilty verdict against defendant for possession. He cannot complain. It was within the judge's discretion to submit the jury instructions on the uncharged included offense despite defendant's objection.

*Taylor* referred to considerations a trial judge may factor in when exercising discretion and determining whether to *sua sponte* submit instructions on an uncharged included offense:

> "In exercising his discretion it is appropriate for the judge to consider that from the point of view of the public interest in

the punishment of wrongdoers, one whose conduct is unlawful should not escape punishment altogether because a jury does not believe that he is guilty of the greater offense. It is also appropriate for him to consider that from the defendant's point of view, the likelihood of a compromise conviction may be enhanced if the jury is permitted to consider successive offenses involving lesser degrees of criminality. In reaching his conclusion it is not impermissible for the judge to give weight to the views of the prosecution and defense as indicated by their requests for instructions." *Taylor*, 36 Ill. 2d at 491, 224 N.E.2d at 271.

Similarly, defendant cannot expect to escape punishment for admitted possession of controlled substances merely because (1) the State charged him only with a greater offense, and (2) the jury was not convinced he was guilty of the charged offense, *i.e.*, possession with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, pars. 1402(a)(2), 1401(a)(2)(A)). Although there was conflicting evidence about whether defendant intended to deliver the controlled substances to others, defendant admitted possession. It would have been a miscarriage of justice to not inform the jury defendant could be found guilty of the uncharged included offense. The trial judge did not abuse his discretion by providing instructions on the included offense to the jury despite defendant's objection.

■■ As guidance to trial courts hearing jury trials in which evidence of uncharged included offenses have been presented, we suggest the following guidelines for the instructions conference to clarify the role of the judge, defense counsel, and prosecutor in determining whether instructions on an uncharged included offense will be provided:

(1) At a conference on jury instructions, the court should inform the parties *sua sponte* if it believes the evidence presented at trial would permit the jury to find defendant guilty of an uncharged included offense and not guilty of the greater offense.

(2) The court should then *sua sponte* inform the parties that if either side asks it to instruct on uncharged included offense(s) it will do so.

(3) The court should make clear to the parties that if neither side asks for such instructions, the court has the discretion to instruct thereon anyway. However, if the court has at that point already determined that it does not intend to give such instructions *sua sponte*, it should so inform the parties.

(4) The court should direct defense counsel to discuss this matter with defendant, informing defendant of the possible options and providing counsel's best professional judgment as to which option defendant should take.

(5) When defense counsel informs the court that counsel and defendant have fully discussed the decision about this matter, *whatever* decision the court is informed defendant wishes to make, the court should personally conduct an inquiry of defendant to ensure that defendant fully understands the nature of the decision he is making. This latter step is especially important in the most serious cases and should avoid subsequent post-conviction petitions based on allegations that defendant did not understandingly and knowingly elect his right to request or not request that the jury be instructed on the uncharged included offense.

This guidance should ensure the parties and defendants are fully informed that the trial judge has discretion in determining when instructions on uncharged lesser included offenses should be provided irrespective of whether either party submits the instructions or the defendant objects to their inclusion. The judge can *sua sponte* instruct on uncharged included offenses.

Defendant next argues the judge's action in including the instructions was error because it deprived him of assistance of counsel. He reasons he rejected the inclusion of the instructions after lengthy discussions with his counsel. Because this decision was a strategic decision, the judge's inclusion of the instructions denied defendant the benefit of this strategy and therefore denied him the benefit of counsel.

A court should exercise restraint in giving instructions on its own motion when the instructions could interfere with defense strategy. (*People v. Requena* (1982), 105 Ill. App. 3d 831, 837, 435 N.E.2d 125, 129, citing *People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.) The judge's inclusion of the instructions here did not interfere with defense strategy. Defendant's testimony does not support an argument that his strategy was to establish he did not possess the controlled substances. Rather, defendant testified on direct examination that the grinder, the cocaine, and the vial containing cocaine, all discovered in his possession on March 16, belonged to him. He also described himself as a cocaine addict.

Moreover, in developing his trial strategy, defense counsel could not have presumed the instructions would not be requested by the State during the instructions conference. If the State requested the

instructions, defendant could not have complained because the instructions related to an included offense. Trial strategy does not include simply hoping the jury will not be informed of the offenses of which defendant can be found guilty given the evidence presented.

Defendant next argues the $2,700 street-value fine imposed against him violates due process when he is a mere user as opposed to a trafficker. The provision under which the fine was imposed provides in relevant part:

"When a person has been adjudged guilty of a drug related offense involving possession or delivery of *** a controlled substance as defined in the Cannabis Control Act, as amended, or the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized." Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1.1.

Defendant argues subjecting a user of controlled substances to the same fines as a trafficker violates the due-process protections of the user. He relies on portions of section 100 of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 1100 *et seq.*), stating the legislative intent therefor. The intent of the Act, in part, is to "penalize most heavily the illicit traffickers or profiteers of controlled substances" and not to "treat the unlawful user *** with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances." Ill. Rev. Stat. 1989, ch. 56½, par. 1100.

An objection at trial and a written post-trial motion are necessary to preserve this issue. (*People v. Felella* (1989), 131 Ill. 2d 525, 540, 546 N.E.2d 492, 498; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defendant has waived this argument because he did not object to questioning at his trial about the street value of the 27.5 grams which he possessed when he was apprehended, nor did he object to the imposition of the fine at sentencing, or raise this argument in his post-trial motion.

Moreover, had defendant properly preserved this issue for review, we would find no merit in the due-process challenge to the statutory scheme.

We note the State contends the statutory scheme does not treat possessors of controlled substances more harshly than defendants who have been convicted of possessing contraband with the intent to deliver. Defendant does not allege this error. The State directs some of its argument to the fact that the statutory scheme does not pose an

equal protection problem. Defendant alleges a due-process violation. There is no reason for us to discuss equal protection.

■ Defendant's due-process rights are not violated by this statutory scheme. As support for his contention, defendant cites to reviewing courts which have stated the purpose of section 5—9—1.1 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1.1) is to prevent drug trafficking and deter the accused who would know in advance the potential monetary penalty that would be imposed. *People v. Carrasquilla* (1988), 167 Ill. App. 3d 1069, 1074, 522 N.E.2d 139, 142; see also *People v. Lusietto* (1989), 131 Ill. 2d 51, 55, 544 N.E.2d 785, 787.

Both instances involved a defendant liable for a street-value fine because defendant was convicted of trafficking or attempting to traffic. In *Lusietto*, defendant pleaded guilty to unlawful delivery of a controlled substance. (*Lusietto*, 131 Ill. 2d at 52, 544 N.E.2d at 785.) Defendant in *Carrasquilla* was convicted of possession of controlled substances with intent to deliver. (*Carrasquilla*, 167 Ill. App. 3d at 1072, 522 N.E.2d at 140.) The court in these instances had no reason to note the legislative intent behind street-value fines when a defendant is convicted of possession. The courts were not asked to address the issue before us.

One part of *Lusietto* quoted by defendant is apt. The *Lusietto* court noted section 5—9—1.1 of the Code was enacted to "discourage and impede the illegal buying *** and using of drugs." (*Lusietto*, 131 Ill. 2d at 55, 544 N.E.2d at 787.) We previously characterized the provision as applying to "drug offenders" and looked specifically to the stated legislative intent of section 100 of the Act, which states the intent is to provide a system of control over distribution and use of controlled substances although traffickers and profiteers should be penalized most heavily. *People v. Ruff* (1983), 115 Ill. App. 3d 691, 694, 450 N.E.2d 1369, 1372-73.

The Illinois Supreme Court has upheld the constitutionality of the provision attacked by defendant. The court reasoned that because the amount of the mandatory fine was based on the street value of the amount of drugs involved, a large-scale operator would, necessarily, be punished more severely than a petty distributor. (*People v. Harmison* (1985), 108 Ill. 2d 197, 205, 483 N.E.2d 508, 512.) As noted in *Harmison*, the General Assembly sets the nature and extent of penalties. (*Harmison*, 108 Ill. 2d at 205, 483 N.E.2d at 512, citing *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 416 N.E.2d 259.) Whether it properly exercised this power is determined by looking to whether the statute is reasonably designed to address the problems

the legislature viewed as a public threat. (*Harmison,* 108 Ill. 2d at 205, 483 N.E.2d at 512, citing *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) Although the court in *Harmison* addressed treatment of large-scale versus petty distributors, we find the same reasoning applies when a possessor of controlled substances is fined. Defendant argues a user could be in possession of larger quantities than a distributor. This argument is not compelling.

We find persuasive the decision of the Second District Appellate Court in *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513, wherein defendant argued the provision as applied to a mere possessor of controlled substances is not a reasonable means for the legislature to attain its purpose. One who possesses controlled substances merely for his own use could reasonably be expected to be in possession of a smaller quantity of controlled substances than a person possessing quantities with the intent to distribute the substances to others. In this way, a possessor, as opposed to a trafficker, would receive a smaller fine based on the amount possessed. (*Moffit,* 138 Ill. App. 3d at 119, 485 N.E.2d at 522-23.) Defendant's due-process rights are not violated by section 5—9—1.1 of the Code. His fine was reasonably based on the amount of controlled substances which he possessed when he was arrested March 16, 1990.

■ Defendant finally argues he is entitled to $315 against his $400 fine and his $2,700 street-value fine because he spent 63 days in custody before he was sentenced. The State argues defendant is not entitled to credit because he did not present this argument to the trial court or include it in his post-trial motion. Defendant's failure to seek credit at the trial level does not preclude our granting him credit because there is no indication the circuit clerk informed him of his entitlement. *People v. Emery* (1989), 190 Ill. App. 3d 171, 173, 546 N.E.2d 658, 659; Ill. Rev. Stat. 1989, ch. 38, par. 110—14.

At sentencing, defendant received 63 days' jail credit for time served. Section 110—14 of the Illinois Code of Criminal Procedure of 1963 provides that defendant is entitled to a $5 credit against a fine for each day defendant spent in custody for the offense of which he was convicted. (Ill. Rev. Stat. 1989, ch. 38, par. 110—14.) Although defendant is entitled to a $5-per-day credit, he argues this credit should be applied to reduce each of his fines.

Defendant contends we should refuse to follow a fifth district ruling that defendant was not entitled to have the $5-per-day credit for two days previously served credited against *both* his fine for unlawful delivery of a controlled substance and his street-value fine. (*People v. Cole* (1987), 155 Ill. App. 3d 171, 172, 507 N.E.2d 1319, 1320.) The

*Cole* court reasoned the fines provided for under sections 5—9—1 and 5—9—1.1 of the Code (see Ill. Rev. Stat. 1989, ch. 38, pars. 1005—9—1, 1005—9—1.1) are separate and distinct. It noted that in section 5—9—1.1 of the Code the legislature specifically provided for the street-value fine *in addition* to any other penalty imposed. (*Cole,* 155 Ill. App. 3d at 172, 507 N.E.2d at 1320.) We do not view the language in section 5—9—1.1 of the Code as precluding a defendant from receiving credit toward his street-value fine. This does not necessarily compel us to reach defendant's conclusion that he should receive credit against both his $2,700 street-value fine and an additional $400 fine.

Defendant argues the Illinois Supreme Court ruling in *People v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879, supports his view. In *Hare,* the court ruled a defendant could receive the $5 credit for each day the defendant has remained in custody on a bailable offense prior to conviction and sentencing, and also sentence credit against the sentence of imprisonment imposed. (*Hare,* 119 Ill. 2d at 449, 519 N.E.2d at 882.) Despite defendant's contention, we conclude this ruling does not support the award of such credit against more than one fine. Credit against the sentence and fines imposed is distinct from what defendant seeks in this case. He seeks credit against more than one fine, *i.e.,* double the monetary credit.

The legislature does not appear to have intended this outcome. The Illinois Supreme Court has noted that in statutorily granting a $5-per-day credit against a defendant's fine the legislature may have assumed that persons who are not in custody are more likely to retain employment than persons in custody, and therefore are better able to pay any fines subsequently imposed by the court. (*Hare,* 119 Ill. 2d at 448-49, 519 N.E.2d at 882.) There is no indication the legislature intended to provide such credit to defendants against more than one fine, where two or more fines are imposed based upon various statutory provisions.

Defendant is entitled to a $5-per-day credit for the 63 days he was imprisoned before his conviction. This credit should not be applicable to both his street-value fine and his additional $400 fine. Accordingly, the case is remanded to the circuit court of McLean County with directions for a $5-per-day credit to be given against one of defendant's fines.

Affirmed and remanded in part with directions.

STEIGMANN and McCULLOUGH, JJ., concur.