SIXTH DIVISION

                                             September 30, 1997                                           

No. 1-95-1711

THE PEOPLE OF THE STATE OF ILLINOIS,    ) Appeal from the 

 ) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) 

)

ROLANDO GARCIA, ) Honorable

) Stanley Sacks,

Defendant-Appellant. ) Judge Presiding. 

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant Rolando Garcia was charged by indictment with a single count of possession of a controlled substance (15 or more grams but less than 100 grams of cocaine) with intent to deliver.  Following a jury trial, defendant was convicted of the lesser included offense of possession of a controlled substance and sentenced to seven years' imprisonment.  On appeal, defendant contends that: (1) the trial court abused its discretion in instructing the jury, 
sua
 
sponte
 and over defendant's objection, on the lesser-included offense of possession of a controlled substance, and (2) he was not proven guilty beyond a reasonable doubt. For the reasons that follow, we reverse.

 The State's evidence established that on the morning of September 16, 1994, Chicago police officers Robert Norise, Clyde Raymond, Kenny Johnson, Cindy Zalinski, Carla Kubasak and Sergeant Thomas Martin executed a search warrant for a house, located at 5520 South Francisco in Chicago, and an arrest warrant for a person named "Hygie."  

When the police arrived at the house, they knocked and identified themselves.  Once inside, they met Alfredo Aguilar and an unnamed female.  In searching the unfinished basement, Officer Norise saw no walls.  He found dirty adult clothing, a laundry area, a bed in a sleeping area, and a pool table.  

When Officer Norise opened a utility closet, which was located along the north wall of the basement, he found a gas meter and a small, white box of plastic sandwich bags.  Because he was not the police officer who had applied for the warrant, Officer Zalinski was called.  The search continued after Officer Zalinski arrived.  Officer Norise handed Officer Zalinski the box he had discovered on a ledge several inches over the door inside the closet.  The box contained 24 smaller, plastic bags of a white, rock-like substance, a small scale and some mail.  Several traffic tickets issued to defendant were found and indicated that on July 23, 1994, he lived at this address.  Several court summonses, dated September 12, 1994, and issued to defendant at that address, were also found.  Based upon his experience, Norise, a veteran officer, was of the opinion that the sandwich bags and the gram scale were used for selling drugs.   

Officer Kenneth Johnson corroborated Norise's testimony concerning the items found in the house.  Officer Johnson also testified that Officer Zalinski maintained possession of the recovered contraband until it was inventoried.   At the police station, Officers Zalinski and Johnson placed the suspect drugs in a heat-sealed evidence bag, marked with inventory number 1395861, and then placed the bag in the vault.  All of the recovered property was recorded in the inventory book before it was sent to the crime laboratory.  The items inventoried included: traffic citations, traffic court notices of nonappearances and bond forfeiture, an electric gram scale, and the clear plastic sandwich bags.

 On September 28, Officer Johnson received a notice of discrepancy from the crime laboratory, stating that 25 bags had been inventoried, but only 24 bags of a white, rock-like substance were recovered from the heat-sealed envelope received by criminologist John McDonald.  The next day, Officer Johnson reinventoried the evidence envelope of plastic bags attributed to defendant at 5520 South Francisco and counted 24 bags.  Johnson attached a new inventory slip, which was automatically generated by the crime laboratory and reflected a new inventory number.  He then attached it to the old inventory envelope. 

Officer Ethel Scherr testified that on September 29, 1994, she arrested defendant in response to a call regarding a suspicious van containing two occupants in the 5400 block of South Rockwell.  When Scherr approached the van and defendant did not produce identification, he was taken to the police station.  At the police station, defendant provided the police with his name and address, 5520 South Francisco.  When the police told defendant of an outstanding narcotics warrant for defendant's arrest, he did not seem surprised.  Defendant responded that police officers had recently been to his home.  The police officers then completed an arrest report verifying this information.  During this inquiry, defendant showed the officers a tattoo on his arm which read "Hygie."  

Criminologist John McDonald testified that he originally counted 24 bags of substances, although the original inventory sheet listed 25 bags.  After the discrepancy was rectified by Officer Johnson, McDonald tested and weighed the substances.  During this reinventory, the computer generated a new inventory number for the bag.  Out of 24 bags, McDonald tested 20 bags, weighing 17.2 grams, and found each bag contained cocaine. 

The defense called Michael Bagain, defendant's friend, who  testified that he spoke to defendant on the day of the raid.  On the day of the raid, Bagain purchased one-sixteenth ounce of cocaine from Aguilar at 5520 South Francisco.  Bagain did not enter the house that day or know where Aguilar kept the drugs he purchased.  Bagain testified that on the day of the raid defendant resided at 7343 South Archer Avenue.

Timothy Goheen, another friend of defendant, testified that in early September 1994, he lived at 7443 West Archer in Summit with his fiancee, Diane Bagain, who was Michael Bagain's sister, and his child.  Defendant moved into the apartment that month because Goheen  needed money to pay his rent and defendant had money.  

After the parties had rested, the attorneys met with the court to discuss what instructions should be given to the jury.  When the court asked defense counsel whether he was offering an instruction on the lesser-included offense of possession of a controlled substance, defense counsel answered, "No."

The trial court then referred to the case of 
People v. Brocksmith
, 162 Ill. 2d 224 (1994), and admonished defendant of his right to determine whether he wanted to request a jury instruction on the lesser-included but uncharged offense.  The court reviewed the charged offense and potential sentence and identified the lesser-included offense and potential sentence.  Defendant unequivocally stated that he agreed with his lawyer's decision and did not want to request a lesser-included-offense instruction.  The court then asked defendant his age and educational background, establishing that defendant was 21 years old and had completed twelfth grade.  The court told defendant and the parties that it had a responsibility 
sua
 
sponte
 to give the jury a lesser-included-offense instruction if the evidence warranted such an instruction.  The court summarized the evidence, noting the small amount of narcotics recovered, and found that the evidence warranted a lesser-included-offense instruction.  The court held that such an instruction was "fair under the circumstances of this case."  The court stated it had the authority and discretion to order such instruction and was going to do so, despite defendant's objection. 

Defendant's motion for a new trial argued that the court erred in submitting, 
sua
 
sponte
, a jury instruction on the lesser-included offense of possession of a controlled substance.  After providing the justification for its earlier reasoning, the court denied defendant's motion for a new trial.

On appeal, defendant contends that the trial court committed reversible error by presenting, 
sua
 
sponte
, the jury instruction on the lesser-included offense of possession where the State did not request such instruction and defendant strenuously objected. We agree.  In 
People v. Sinnott
, 226 Ill. App. 3d 923, 925 (1992), the fourth district considered a factually similar case where the defendant was charged with possession of a controlled substance with intent to deliver.  At the instructions conference, defense counsel informed the trial court that, after discussions with the defendant, the defendant did not wish to submit an instruction related to the uncharged included offense of possession of a controlled substance. 
Sinnott
, 226 Ill. App. 3d at 927.  The trial court, however, 
sua
 
sponte
 and over defense counsel's objections, concluded that a lesser-included-offense instruction was necessary and submitted such instruction to the jury, which ultimately found defendant guilty of the lesser- included offense of possession of a controlled substance. 
Sinnott
, 226 Ill. App. 3d at 927.  Citing 
People v. Taylor
, 36 Ill. 2d 483 (1967), the court held that a trial court has the discretion, irrespective of whether either party submits the instructions or the defendant objects to their inclusion, to 
sua sponte
 instruct on uncharged included offenses. 
Sinnott
, 226 Ill. App. 3d at 932.

We disagree with 
Sinnott
, finding its holding at odds with supreme and appellate court precedent. In fact, the alleged error in 
Sinnott
 is more egregious than that in the case before us.  There, the defendant admitted that he possessed the drugs.  The trial court then 
sua sponte
 submitted an instruction on the offense of possession and in effect directed a verdict of guilty against defendant.  The trial court should not, under the entitlement of discretion, have the ability to remove the issue of defendant's criminal accountability from the jury.  Moreover, in 
People v. Barnard
, 104 Ill. 2d 218, 232 (1984), the supreme court held that it would "not have been proper for the judge to interfere with defense counsel's strategy and give the self defense and voluntary manslaughter instruction[s] 
sua sponte
." As the appellate court noted in 
People v. Gramc
, 271 Ill. App. 3d 282, 287 (1995), the "
Sinnott
 court did not even mention 
Barnard
, so apparently the court was unaware of 
Barnard
 or was unaware that its ruling was contrary to a holding of the supreme court."

The thoughtful writer of 
Sinnott
 sought to establish guidelines for the trial court, suggesting: (1) at the jury instructions conference, the court should advise the parties of its belief that there is a lesser-included uncharged offense; (2) that if either side offers an appropriate instruction as to that issue, it will be given; (3) the court should advise the parties that it may instruct even though neither party tenders a lesser- included offense instruction; (4) defense counsel should be directed to discuss the issue with the defendant; and (5) the court should make inquiry of the defendant and, if defendant still does not request a lesser-included-offense instruction, the trial court may, 
sua sponte
, give such instruction to the jury. 
Sinnott
, 226 Ill. App. 3d at 931-32.

To begin our analysis, the "should" in the 
Sinnott
 guidelines should be changed to "may." The failure of the trial court to advise the parties of the possibility of a lesser- included offense ought not be grounds for appeal.

These guidelines are otherwise appropriate 
except
 the notion that the trial court can exercise its discretion to, 
sua sponte
, instruct the jury on the lesser-included uncharged offense.  To impose an obligation to give such instruction gives trial courts no direction as to when that discretion should be exercised.  In 
Sinnott
, it was tantamount to a directed verdict of guilty!  In the present case, it overrides prosecutorial discretion in the charging phase and the defendant's right to determine a knowing strategy of defense.

Should the trial court's discretion be exercised when it appears that the evidence is thin as it relates to the greater, charged crime, or when it is a "slam dunk" and the court wishes to give the jury a new set of options?  Or is it like pornography -- the trial court will know it when it sees it?  Conversely, if such charging is in the sound discretion of the trial court, are we not likely to begin to receive appeals predicated upon the trial court's failure to give the unrequested instruction?  

We believe that 
Sinnott
 imposes a burden that the trial courts of our state ought not be required to shoulder and abrogates the rights of a defendant to knowingly direct his defense against the charged offense. 

In 
People v. Brocksmith
, 162 Ill. 2d 224, 229-30 (1994), the supreme court held that the decision to tender a lesser-included- offense instruction ultimately belonged to the defendant and not defense counsel.  As observed in 
Gramc
, if the right belongs personally to defendant and not his counsel, it would appear that the judge should not have a greater right than defense counsel to make the decision for defendant and against defendant's wishes. 
Gramc
, 271 Ill. App. 3d at 287.  The 
Gramc
 court further speculated that 
Brocksmith
 may have overruled 
Sinnott
. 
Gramc
, 271 Ill. App. 3d at 287.  We join in this speculation, noting the court's language: "we believe that the decision to tender a lesser included offense is analogous to the decision of what plea to enter, and that the two decisions should be treated the same." 
Brocksmith
, 162 Ill. 2d at 229.  The decision of what plea to enter belongs exclusively to the defendant. 
People v. Ramey
, 152 Ill. 2d 41 (1992). 
 Clearly, if the two decisions are to be treated the same, we cannot allow a trial court to 
sua sponte
 submit an included-offense instruction over defendant's objection.  An equivalent ruling in a pretrial setting would have the trial court deciding how a defendant is to plead.  

Because we believe that trial courts lack the discretion to tender a lesser-included-offense instruction over a defendant's objection, we find the trial court's action in this case to be  error.  The prejudice inuring to defendant is manifest -- he was acquitted of the charged offense and convicted of the lesser included offense of possession. For these reasons, we reverse defendant's conviction.

Reversed.  

THEIS and ZWICK, JJ., concur.